## BROWNLEE v. LANDERS.
### No. 5492.

Court of Civil Appeals of Texas. Amarillo.

Nov. 23, 1942.

Will Crow, of Canadian, for appellant.

Roy Sansing, of Higgins, for appellee.

STOKES, Justice.

This action in trespass to try title was instituted by appellee, Roy J. Landers,

against the appellant, Jesse E. Brownlee, to recover the title and possession of 323.4 acres of land in Lipscomb County, and being the east half of Section 855 in Block 43. Appellant answered by a plea of not guilty and by setting up the three, five, and ten years' statutes of limitations and adverse possession. The case was submitted to the court without the intervention of a jury and resulted in a judgment in favor of appellee from which appellant has prosecuted an appeal to this court.

The record reveals without controversy that appellant is the owner of the west half of the section and appellee is the owner of the east half. The controversy pertains only to a strip of land on the west side of the east half, containing 16.83 acres. In 1921 appellant leased for farming purposes to one John A. Paine the west half of the section which was at that time raw land and, in order properly to put it in cultivation, the tenant desired to erect a fence on the east line which would be the center line of the section. He procured permission from appellant to erect the fence, appellant agreeing to pay for the material, and the tenant attempted to erect the fence on the center line but he did not have the land surveyed and located the line merely by guess. The fence remained where he located it until the suit was filed. A survey of the east half of the section belonging to appellee revealed that the fence was established 64½ varas east of appellant's southeast corner and 35½ varas east of his northeast corner, thus including 16.83 acres belonging to appellee.

Appellant presents the case in this court upon a number of assignments of error which may be reduced to three controlling issues. He contends, first, that the judgment entered by the court is void and of no effect because it does not describe the land with any degree of certainty and that the officer attempting to execute a writ of possession would be put to the necessity of exercising judicial functions in order to locate the land; secondly, that the court erred in rendering a judgment against him for $92.28, the rental value for the year 1941, as found by the court; and, thirdly, that the court erred in ruling against his plea of ten years' adverse possession and limitation.

The first contention is based upon the description of the land contained in the judgment. The provisions of the judgment are that appellee recover of and from ap-

pellant the east half of Section 855, Block 43, described by metes and bounds as follows: "Beginning at a point on the north line of the said Section No. 855 locate 960.5 varas east of a mound and 4 pits the N.E. corner of Section 854; Thence East from said point 960.5 varas to the N.W. corner of Section No. 856; Thence South 1900 varas to the N.E. corner of Section No. 818; Thence West 960.5 varas to a point located on the South line of Section No. 855 and 960.5 varas east of a post mkd. S.W. 855; Thence North 1900 varas to the place of beginning, containing 323.4 acres of land."

This description is identical with that contained in appellee's first amended original petition upon which the case was tried, and appellant contends that it is not sufficient to enable the officer executing a writ of possession to locate the center line of the section running north and south and dividing the east half from the west half, because no object is located on the ground that would aid him in doing so. We cannot agree with appellant in this contention. The field notes adopted as a beginning point for the east half of the section a point on its north line which is located 960.5 varas east of a mound and four pits, the northeast corner of Section 854, which evidently lies immediately west of and adjoining Section 855. There was no testimony to the effect that the mound and four pits called for as the beginning point are not visible on the ground, and the undisputed testimony showed that the north end of the center line of the section was located by the surveyor, appointed by the court, at the exact spot at which it is located by the first call of the field notes in the judgment. Moreover, the third call in the field notes, locating the southwest corner of the tract, calls for a post marked "S.W. 855", which the field notes say, in effect, is 960.5 varas west of the southwest corner of this tract. It is obvious, we think, that an officer attempting to execute a writ of possession could locate the east half of the section from the objects called for in these two calls. The judgment provides another method by which the land in controversy could be located from objects on the ground. The uncontroverted evidence showed that appellee is, and has at all times been, in possession of all of the east half of the section which lies east of the fence erected in 1921 by John A. Paine and that the fence still stands there. In

addition to describing the east half of the section in the field notes above quoted, the judgment provides that the 16.83-acre strip located.on the east half, but lying west of the fence, is included in the tract decreed to appellee. It states that this strip consists of a tract, the south line of which begins at the intersection of the fence and the south line of Section 855 and extends west 64½ varas, and that its north line begins at the intersection of the fence and the north line of the section and extends west 35½ varas. The north and south lines could have been located from the two objects above mentioned, and the east line was designated by the fence. By this description, the officer executing the writ could easily locate all the land in dispute. The remainder of the east half of the section was already in the possession of appellee. The only thing that would have remained would have been the simple matter of closing the two points representing the northwest and southwest corners of the tract and, according to the provisions of the judgment, not only would the west line of the east half of the section have thereby been located, but a complete survey of all the land in dispute would have been accomplished. There is, therefore, no merit in these assignments of error and they will be overruled.

■ The court rendered a money judgment in favor of appellee and against appellant for the sum of $92.28 with interest thereon from July 1, 1941. This represented the value of the landlord's portion of the wheat produced by the tenant from the 16.83 acres in dispute and delivered to appellant during the year 1941. Appellant bases his assignment of error on a recital in the judgment to the effect that appellant had never been in possession of the land located on the east half of the section and lying west of the fence. The recital referred to had reference only to such possession as was necessary to perfect title by adverse possession and limitation. The uncontroverted evidence showed that the tenant, John A. Paine, had cultivated the 16.83 acres each year from 1921 to 1941, inclusive, and that he had delivered the rental to appellant because he thought the fence was on the line and that all of the land lying west of the fence was within the west half of the section and belonged to appellant. The tenant delivered the 1941 rental wheat to appellant, and the undisputed evidence showed that it was of the value of $92.28. There was, therefore, no error in the respect here complained of.

■ The third contention made by appellant has reference to his plea of ten years' adverse possession and limitation. No evidence was offered in support of his allegations of three and five years' adverse possession and the controversy in reference to that matter was reduced solely to the ten-year statute, Articles 5510 and 5515, R.C.S.1925. Appellant contends that he held possession of the 16.83-acre strip off the west side of the east half of the section from 1921 until the suit was filed June 24, 1941. He does not claim he ever occupied or cultivated the land in person, but that he held such possession by his tenant, John A. Paine. The evidence upon which he bases this contention consists of his lease contracts with Paine, a number of which were in writing, and Paine's occupancy of the land. The first lease contract entered into between them was dated November 12, 1921. By its terms appellant leased to Paine "the West Half of Section 855 in Lipscomb County, Texas, containing 320 acres, more or less." Each year thereafter until July 9, 1934, the land was leased to Paine as the west half of the section and being 323.4 acres. On July 9, 1934, the lease described the land as being the west half of Section 855, containing approximately 354.36 acres. Likewise, in July 1936, it was described in the lease as being 354.36 acres, and this seems to be the last written lease contract entered into between them. The tenant, John A. Paine, testified that never, at any time, was his occupancy or possession of the land intended to be adverse to the rights and title of appellee. He said he thought the fence was located on or very near the center line of the section and that he never intended to occupy any land belonging to appellee until the year 1941, when he leased the east half of the section from appellee. As we have said, Paine's possession is the only possession which appellant claims to have been adverse and it is plain from Paine's testimony that his possession was not of the nature required by article 5515, R.C.S.1925. That article provides that adverse possession is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. While Paine occupied the land

under appellant as his landlord, yet his possession was not in any manner hostile to that of appellee.

 Moreover, regardless of the purposes and intentions that Paine may have had concerning his possession, it could not have inured to the benefit of appellant, because appellant leased to him each year only the west half of the section. In order to ripen into a title by limitation, the adverse possession must be such as to expose the possessor to some kind of liability for the acts committed by him or under his authority during the period he seeks to establish title by adverse possession. The law is established in this State, as well as in many other jurisdictions, that no act or trespass committed by a lessee will subject the lessor to liability or expose him to a suit for damages unless such acts are committed upon the premises included in the lease contract. If the lessee commits such trespass on land other than that included in his lease, such trespass is his own act for which he alone is liable. Williams v. Fuerstenberg et al., Tex.Com.App., 23 S. W.2d 305; Niendorff et al. v. Wood et al., Tex.Civ.App., 149 S.W.2d 161, and authorities there cited.

When an owner of land, or a landlord, claims under the statutes of limitation by virtue of the possession of a tenant, he is deemed to have possession only of that land of which, as between him and his tenant, the latter has lawful possession under the terms of the lease contract. Appellant procured no rights, therefore, by virtue of Paine's mere naked possession of the 16.83-acre strip here involved, because his lease contracts with Paine gave Paine no rights beyond the land which was included in the west half of the section. In our opinion, the court below correctly entered judgment against appellant in so far as this phase of the case is concerned.

The judgment provides that appellee should recover interest on the $92.28 from July 1, 1941. Appellant complains of this provision of the judgment and asserts that appellee was entitled to interest, if at all, only from April 10, 1942, the date of the judgment. Appellee confesses error in respect to this provision of the judgment and offers to remit the interest from July 1, 1941, to the date of the judgment, amounting to $4.14. This requires a reformation of the judgment in such manner as to eliminate the small item of excess

interest. It does not appear from the record that the matter was called to the attention of the trial court, however, and the rule under which the costs are taxed against the losing party will not be affected by the reduction in amount of appellee's recovery. Savage Oil Co. v. Johnson et al., Tex.Civ.App., 141 S.W.2d 994; Raike v. Clayton, Tex.Civ.App., 175 S.W. 498; Gooch v. Keith, Tex.Civ.App., 125 S.W.2d 628.

Other than the excess interest recovered by appellee, we find no error reflected by any of the assignments or contentions of appellant. The judgment of the court below will therefore be reformed so as to allow appellee interest at the rate of six per cent per annum from the date of the judgment, and in all other respects it will be affirmed.